No. 49,506

GEORGIA JONES, *Appellant,* v. ST. FRANCIS HOSPITAL & SCHOOL OF NURSING, INC., A Corporation, *Appellee.*

(594 P.2d 162)

Opinion filed May 5, 1979.

*David P. Troup,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause and was on the brief for the appellant.

*Robert L. Heath,* of Jochems, Sargent & Blaes, of Wichita, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This is an interlocutory appeal certified by a district court and presented to this court on an agreed statement of facts. The action as filed in the district court was brought for the purpose of setting aside an execution sale of a residence property in Wichita. The district court held that the plaintiff and her deceased husband each owned a half interest in the property when the execution was levied, and that title to the property sold to satisfy the judgment debt of the husband did not pass to the purchaser. The certificate of purchase issued by reason of said sale and the sheriff's deed were set aside as void because they purported to cover the wife's interest. It was further held that one-half interest in the residence formerly owned by the deceased husband remained subject to the judgment lien.

The identification of issues by the parties to this appeal leaves a great deal to be desired. In the "agreed statement of facts and

issues" ten issues are identified as those to be considered on appeal. In appellant's brief six "questions presented" are first listed but these are ignored in the argument presented in the brief, and five different points are then listed and discussed. The appellee's brief speaks to five points but two of the five points do not coincide with those discussed by appellant. We will not attempt to answer the ten issues identified in the "agreed statement of facts and issues." We will address only those issues which appear necessary to decide this appeal.

We believe a sequence of events will be helpful.

October 10, 1955, Horace N. Miller and his first wife, Ora J. Miller, acquired the property in controversy by deed as joint tenants with right of survivorship and not as tenants in common.

November 8, 1960, Ora J. Miller died and her interest in the property passed to Horace N. Miller as the surviving joint tenant.

In 1962, Horace N. Miller and Georgia Jones entered into a marriage contract. Miller and Jones resided on the property and occupied it as their homestead.

March 21, 1966, the appellee St. Francis Hospital obtained a personal judgment against Horace N. Miller.

August 18, 1966, Horace N. Miller died intestate. At that time the property was occupied as a homestead by Miller and his second wife, Jones. No probate proceedings were filed to administer his intestate estate. Jones continued to live in the premises.

July 28, 1969, almost three years later, St. Francis Hospital issued a general execution against the property of Miller. The execution was returned unsatisfied with a notation, "Not found (deceased)."

April 19, 1971, a proceeding was filed in the probate court for determination of the descent of the property with a caption, "In the Matter of the Estates of Horace N. Miller and Ora L. Miller, deceased." In the decree it is recited all debts have been paid except a judgment of St. Francis Hospital. Notice of the hearing was published in the paper but notice was not mailed to the hospital. The plaintiff Georgia Jones was adjudged to be the sole owner of the property as of August 18, 1966.

In late 1972, plaintiff Jones remarried, thus acquiring the surname Jones. She moved from the property in question and leased the same to third parties.

July 12, 1973, the hospital caused a second general execution to

be issued against the property of Horace N. Miller. The execution was returned and marked "no goods found."

January 16, 1975, the hospital caused the third general execution to be issued, and the sheriff was instructed to levy against the property in question, Lot 46, Block J, Plainview Subdivision 1. The sheriff levied execution against the property and proceeded to advertise and sell it at sheriff's sale.

February 20, 1975, after publication of the date and place of sale, the property was sold to the hospital for the amount of the judgment. No substitution of parties was ever noted in the records of the case. No notice of sale was served on Jones.

May 19, 1975, an order confirming the sheriff's sale was entered by the court in the original case of St. Francis Hospital v. Horace N. Miller. Neither Jones nor any attorney in her behalf appeared in these proceedings.

June 6, 1975, a certificate of purchase was issued to the hospital by the sheriff.

Jones maintained possession of the property, continued to collect the rents, and paid the real estate taxes assessed against the property throughout the years of 1975 and 1976.

In early 1977, the hospital advised Jones that it claimed ownership of the property.

April 8, 1977, Jones filed suit to set aside the sale, quiet her title to the property and to recover damages for wrongful execution and sale of the property.

The appellant Jones argues as follows: That the hospital's judgment became dormant upon the death of Horace N. Miller. The executions issued after the death of Miller were invalid and ineffective because the hospital failed to revive the judgment against the heirs of Horace N. Miller. The hospital acquired nothing at the general execution sale of the deceased person's property which property had previously passed on his death to his wife, Georgia Jones. The judgment entered against Horace N. Miller in 1966 did not constitute a lien against the property for it was and continued to be the family homestead. Appellant Jones concludes that regardless of the foregoing the decree of descent assigned title to the property to her and that the validity of the decree is now incontestable.

The appellee hospital on the other hand argues as follows: The judgment did not become dormant upon the death of Miller. The

executions issued after the death of Miller kept the judgment alive for almost nine years. The property was abandoned as a homestead in 1972 and thereupon became subject to sale in satisfaction of the judgment. The real estate descended on the death of Miller to his widow subject to the encumbrance of the judgment entered against Miller during his lifetime. The decree of descent recognized the judgment of the hospital and merely determined the heirs.

We note on the facts stipulated by the parties that the property in question was occupied by Horace N. Miller and Georgia Jones as their homestead prior to and after the hospital obtained its judgment against Horace N. Miller. The judgment was a personal judgment against Miller. It was not a judgment in rem against this particular property. The property continued to be the homestead of the family for six years after the death of Miller.

Our first question is whether a personal judgment entered against the head of the family becomes a lien against the family homestead.

Article 15, Section 9 of the Kansas Constitution provides that a homestead occupied as a residence by the family of the owner shall be exempted from forced sale under any process of law, except a sale for taxes, a sale for payment of obligations contracted for the purchase of said premises or improvements thereon, and a sale for the satisfaction of a lien on the property given by the consent of both husband and wife. In keeping with the constitutional provision the legislature enacted what is now K.S.A. 60-2301, which reads:

"A homestead to the extent of one hundred and sixty (160) acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempt from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon. The provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife."

The legislature has further protected the homestead rights of the family of a decedent so long as the property continues to be occupied by the family after the owner's death. The homestead of

a decedent is declared by K.S.A. 59-401 to be wholly exempt from distribution and from the payment of the debts of the decedent.

A personal judgment entered against a debtor in his lifetime generally becomes a lien upon all property owned by the judgment debtor. K.S.A. 60-2202. Under the Constitution of the State of Kansas the homestead of a judgment debtor is exempt from forced sale, subject to those exceptions recognized in Article 15, Section 9. The residence property was exempt in this case from forced sale. It was the homestead of Horace N. Miller. It continued to be exempt after his death while occupied by his widow Georgia Jones. *Brigham v. Pfister,* 151 Kan. 991, 997, 101 P.2d 869 (1940); *In re Estate of Casey,* 156 Kan. 590, 596, 134 P.2d 665 (1943). The personal judgment did not become a lien on the homestead.

When property is occupied by the owner and spouse as a family homestead, and at the death of the owner it is inherited by the spouse it is then held as the absolute property of the spouse, free from debts of the decedent, so long as the spouse continues to occupy the property as a homestead. See *In re Estate of Casey,* 156 Kan. 590, and cases cited therein at page 596.

Demands against a decedent's estate fall into two general categories, secured and unsecured demands. The secured demands are those for which the creditor holds some security for payment of the demand. K.S.A. 59-1303. A secured demand may be allowed against the decedent's estate, conditioned upon surrender of the security. If the security is surrendered it may be allowed for the full amount found to be due, or the creditor may exhaust his security and make claim for any deficiency remaining due. *In re Estate of Dahn,* 204 Kan. 535, Syl. ¶ 7, 464 P.2d 238 (1970). Unsecured demands must be presented and allowed for payment in the estate.

Under K.S.A. 59-2239 (Corrick), which was the nonclaim statute in effect on the date of the death of Horace N. Miller in 1966, unsecured demands had to be exhibited against the estate of the decedent or become barred. The statute provided:

"No creditor shall have any claim against or lien upon the property of a decedent other than liens existing at the date of his death, unless an executor or administrator of his estate has been appointed within *one year after the death of the decedent* and such creditor shall have exhibited his demand in the manner and within the time herein prescribed." Emphasis supplied.

Under the stipulated facts in this case the decedent Horace N. Miller occupied the property in controversy as a homestead when the hospital first obtained its judgment. No lien attached to this homestead. The property continued as the homestead of the widow on the death of the decedent. The judgment remained an unsecured demand after the death of the decedent. It was not a lien upon this property of the decedent and under the provisions of the nonclaim statute above cited the claim of the judgment became barred when no administrator of the estate was appointed within a year after the death of the decedent.

Horace N. Miller, the judgment debtor, died on August 18, 1966. The personal judgment, being an unsecured claim, became barred under the nonclaim statute on August 18, 1967, when the hospital failed to have an administrator of the estate of Horace N. Miller appointed. Since the judgment was barred by the nonclaim statute questions raised by the parties as to dormancy, revivor and renewal of the judgment are immaterial and become academic questions which this court declines to review. See *Kaw Valley State Bank & Trust Co. v. Riddle,* 219 Kan. 550, Syl. ¶ 10, 549 P.2d 927 (1976).

The judgment of the district court setting aside the sale of the premises together with the sheriff's deed is affirmed. That part of the court's judgment which holds that one-half interest in the residence remained subject to the judgment lien is reversed. The case is remanded for further proceedings in accordance with the opinions expressed herein.